IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DIANE SWINNEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 10-2021-CM |
| ) | |
| STATE FARM FIRE AND CASUALTY ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

**STATE FARM FIRE AND CASUALTY COMPANY'S
MEMORANDUM BRIEF IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

State Farm Fire and Casualty Company moves this Court to grant summary judgment in favor of State Farm and against the Plaintiff, Diane Swinney, on claims asserted in her Complaint alleging insurance bad faith, breach of fiduciary duties, violations of the New Mexico Insurance Code, violations of the New Mexico Unfair Practices Act, and punitive damages. State Farm offers this Memorandum Brief in support of its Motion for Summary Judgment.

**Statement of Material Undisputed Facts**

1. On or about February 3, 2006, Plaintiff Diane Swinney reported tornado damage to her home. The date of occurrence of the alleged damage was June 30, 2005. **(Exhibit A,** State Farm Activity Log, Claim No. 16-R247-648, pg. 10)

2. Due to the nature of the damages claimed, State Farm, through Claim Representative ("CR") Ronald K. Alpough, retained Norton & Schmidt Consulting Engineers, LLC to inspect the premises. **(Exhibit A,** Activity Log, pg. 9)

3. CR Alpough spoke to the insured's adult son, Dean Black, on February 9, 2006, to advise of the plan to obtain an inspection of the premises. **(Exhibit A,** Activity Log, pg. 9)

4. Norton & Schmidt engineer, Laurence C. Fehner, P.E., was able to inspect the Swinney home on March 14, 2006. **(Exhibit A,** Activity Log, pg. 8)

5. As a result of his inspection of the premises, Engineer Fehner concluded the damage to the Swinney home did not result from high winds. **(Exhibit C,** Norton & Schmidt report, dated 3-24-06, page 9)

6. Engineer Fehner concluded "[m]ost of the problems are due to slight amounts of differential settlement of the foundation walls and crawlspace supports in combination with shrinkage and deflection (sagging) of the newer wood framing used for the first floor level." **(Exhibit C,** Norton & Schmidt report, pg. 9)

7. Plaintiff alleges that State Farm has breached the duties of good faith, fair dealing and fiduciary duty as a result of State Farm's "refusal to timely and thoroughly investigate and pay the claim." (Complaint, ¶ 24)

8. Plaintiff's expert, Stephen L. Strzelec, has testified the delay in inspection was not important to the overall handling of the case. **(Exhibit B,** Deposition of S. Strzelec, pg. 47, l. 9-16)

9. State Farm provided insurance coverage to Plaintiff under policy no. 16-EA-3774-0, subject to the terms and conditions agreed upon between the parties at the time of purchase. (Complaint, ¶ 4)

10. The insurance policy between State Farm and the Plaintiff was in effect on June 30, 2005, the date of the alleged loss to the Swinney house. (Complaint, ¶ 5)

11. The State Farm policy, form FP-7955, insuring the Swinney house at the time of the alleged loss, provides the following:

## SECTION I

### COVERAGE A – DWELLING

We insure for accident direct physical loss to the property described in Coverage A, except as provided in **SECTION I – LOSSES NOT INSURED.**

### SECTION I – LOSSES NOT INSURED

1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   \*   \*   \*   \*

   l. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;

2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damages, arises from natural or external forces, or occurs as a result of any combination of these:

   \*   \*   \*   \*

  b. Earth Movement, meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces.

12. The Plaintiff obtained an inspection of the home by Larry Vorba, PE, PMP of Cyntergy AEC, on May 10 and June 6, 2006. Cyntergy issued a report of the inspection on October 29, 2007.

13. After providing a copy of the Vorba report to State Farm, State Farm had the Vorba report reviewed by Mr. Fehner of Norton & Schmidt, who issued a second report. Mr. Fehner disagreed with the conclusions reached by Mr. Vorba. **(Exhibit D,** Report from L. Fehner, PE, dated 12-19-07)

14. According to Plaintiff's Expert, Mr. Strzelec, "State Farm has adopted some outstanding claims manuals and policies and procedures." **(Exhibit B,** pg. 103, l. 23-24)

## ARGUMENT

### I. State Farm is Entitled to Summary Judgment As a Matter of Law

In recent years, the United States Supreme Court has stressed the importance of Rule 56 and the necessity of recognizing a movant's right to a prompt disposition of weak claims. In *Celotex v. Catrett,* 477 U.S. 317 (1986), the Court noted:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action"…Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex,* 477 U.S. 327.  When presenting a motion for summary judgment, the movant has the burden of establishing "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The non-moving party must then come forward with some evidence showing a genuine issue of fact for trial.

> [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  <u>If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.</u>

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986) (citation omitted) [emphasis added]

This trend has been followed by the United States Court of Appeals, Tenth Circuit. *See, e.g., Toledo v. Nobel-Sysco, Inc.,* 892 F.2d 1481 (10th Cir. 1989); *Manders v. Oklahoma,* 875 F.2d 263 (10th Cir. 1989).  In addition, the Tenth Circuit has stressed that summary judgment is not precluded merely because the parties may differ on the conclusions to be drawn from the underlying facts which are not in dispute:

> If a nonmoving party makes some showing on a material issue, we must consider the applicable standard of proof to determine whether the showing is sufficient for a reasonable trier of fact to find for the nonmoving party on that issue.  Should the nonmoving party not make a sufficient showing on any essential element of his case, all other facts are rendered immaterial, and summary judgment is appropriate.

*Michigan Consolidated Gas Co. v. Panhandle Eastern Pipe Line Co.,* 887 F.2d 1295, 1376-77 (10th Cir. 1989).  *See, Zaintz v. City of Albuquerque,* 739 F. Supp. 1462 (D.N.M. 1990), *citing, Celotex Corp. v. Catrett,* 477 U.S. 317, 327, (1986) ("Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to 'secure the just, speedy and inexpensive determination of every action.'")

With these principles in mind, the following discussion demonstrates that State Farm Fire and Casualty Company is entitled to summary judgment as a matter of law.

## II. State Farm did not act in bad faith, and did not violate New Mexico law in the handling of Plaintiff's claim.

The Plaintiff has asserted that State Farm has acted in bad faith and violated New Mexico law in the handling of Plaintiff's claim. However, the evidence does not support Plaintiff's assertions against State Farm. In support of her claim, the Plaintiff asserts that "State Farm had contractual duties to provide insurance coverage, to timely and thoroughly investigate, evaluate and pay the claims to Swinney…" (Complaint, ¶ 9) The Complaint then goes on to allege that State Farm breached these duties to the Plaintiff. However, there is simply no evidence to support the Plaintiff's contentions.

It is undisputed that a contract of insurance existed between State Farm and the Plaintiff on the date of the alleged loss, **(Material Undisputed Fact No. 10)** and it is further undisputed that the policy of insurance was subject to certain terms and conditions. **(Material Undisputed Fact No. 9)** One of the conditions set forth in the contract was an exclusion of coverage for loss caused by "settling, cracking, shrinking, bulging or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings." **(Material Undisputed Fact No. 11)** Another exclusion in the State Farm policy precluded coverage for "earth movement" whether or not the movement was combined with water. **(Material Undisputed Fact No. 11)** Based upon his inspection of the premises, Laurence C. Fehner, PE concluded the damage complained of resulted from settling of the house, not from high winds or tornados. **(Material Undisputed Fact No. 6)** "Settling" is not covered under the policy. **(Material Undisputed Fact No. 11)** Thus, there is no coverage for the damages allegedly sustained to the house on or

6

about June 30, 2005. When the damage is subject to an exclusion there is no obligation for an insurer to pay a claim arising from that damage.

Closely related to the issue of coverage is whether State Farm breached its duty to timely and thoroughly investigate the claim. Initially, it is important to note that Plaintiff delayed some seven (7) months after the alleged wind damage before reporting the claim to State Farm. **(Material Undisputed Fact No. 1)** After the claim was reported, in early February 2006, State Farm then began its investigation. It hired a structural engineering firm, Norton & Schmidt Consulting Engineers, LLC to go to the Swinney house and inspect the damages. **(Material Undisputed Fact No. 2)** State Farm also attempted to contact the insured, Plaintiff Swinney, and was successful in contacting Plaintiff's adult son, Dean Black, who occupied the house. **(Material Undisputed Fact No. 3)** Mr. Black was present at the home when Norton & Schmidt (Laurence C. Fehner, PE) inspected the home on March 14, 2006. **(Material Undisputed Fact No. 4)** Following the inspection, Mr. Fehner issued a report of his findings on March 24, 2006. Mr. Fehner concluded the damage was not the result of high winds. **(Material Undisputed Fact No. 5)**

Based upon the prompt work on the claim, State Farm contends the investigation was timely and thorough, contrary to the allegations of the Plaintiff. In fact, Plaintiff's own expert concurs with State Farm's position, testifying that any delay in the investigation was not important to the overall handling of the case. **(Material Undisputed Fact No. 8)** Although State Farm made a decision to deny the claim, as a result of the Fehner report, it did consider other evidence when Plaintiff submitted a report from another engineer, Larry Vorba, PE, who concluded the damage was

7

consistent with high winds. **(Material Undisputed Fact No. 12)** State Farm then asked Mr. Fehner, of Norton & Schmidt to review the Vorba report and consider the conclusions Mr. Vorba reached. Mr. Fehner did review the Vorba report, but did not agree with the Vorba findings. In a second report, Mr. Fehner spelled out why he did not agree with the Vorba report. **(Material Undisputed Fact No. 13)** The above undisputed evidence supports a finding that State Farm did conduct a timely and thorough investigation. The Plaintiff has no evidence to the contrary.

Because of the conclusion that the damage to the Swinney house was caused by settling rather than by high winds, there was no duty on the part of State Farm to pay for the loss. Where there is no coverage for a loss, there is no duty to pay and, therefore, no breach of any duty under the insurance policy. Where there is no genuine issue as to any material fact, State Farm is entitled to judgment as a matter of law.

### A. Plaintiff Cannot Establish Her Claim that State Farm has Acted in Bad Faith or Breached a Fiduciary Duty to Plaintiff

Under New Mexico law, bad faith exists in the denial of an insured's first-party claim only where the denial is "frivolous or unfounded." *Chavez v. Chenoweth,* 89 N.M. 423, 553 P.2d 703 (Ct. App. 1976). Where payment of policy proceeds depends on an issue of law or fact that is "fairly debatable" the insurer is entitled to debate that issue. *United Nuclear Corp. v. Allendale Mut. Ins. Co.,* 103 N.M. 480, 709 P.2d 649 (1985). Specifically, the New Mexico jury instruction concerning a bad faith failure to pay a first party claim states as follows:

> An insurance company acts in bad faith when it refuses to pay a claim of the policyholder for reasons which are frivolous or unfounded. An insurance company does not act in bad faith by denying a claim for reasons which are reasonable under the terms of the policy.

8

> In deciding whether to pay a claim, the insurance company must act reasonably under the circumstances to conduct a timely and fair [investigation] [evaluation] of the claim.
>
> It may not unreasonably delay its notification to the policyholder that the claim will be paid or denied.
>
> A failure to timely [investigate] [evaluate] [pay] a claim is a bad faith breach of the duty to act honestly and in good faith in the performance of the insurance contract.
>
> NM U.J.I. 13-1702

With regard to the claim of fiduciary duty, New Mexico recognizes such duty under only limited circumstances, none of which apply in this case. "Something more than the fact of the insurance relationship is required before a fiduciary relationship results. See *Stockett v. Penn Mut. Life Ins. Co.*, 82 R.I. 172, 106 A.2d 741 (1954)." *Chavez v. Chenoweth,* 89 N.M. 423, 430, 553 P.2d 703, 710 (Ct. App. 1976). In this case, there is no fiduciary obligation to the Plaintiff other than to deal in good faith with the insured. *Romero v. Mervyn's,* 109 N.M. 249, 255, 784 P.2d 992, 998 (1989). *See, Woodmen Accident & Insurance Co. v. Bryant,* 784 F.2d 1052, 1056 (10th Cir. 1986).

Applying the law to the facts, the Plaintiff has no material evidence to support her claim for bad faith. As discussed above, Plaintiff submitted her claim on February 3, 2006 **(Material Undisputed Fact No. 1)** after which State Farm promptly began its investigation. It retained an engineering firm to inspect the home and determine the nature and extent of the damages, **(Material Undisputed Fact No. 2)** and discussed the claim with the homeowner's adult son, Dean Black, who was in agreement with the plan for inspection. **(Material Undisputed Fact No. 3)** The inspection took place on March 14, 2006, and a report of findings from the inspection was issued on March 24, 2006. **(Material Undisputed Fact Nos. 4 & 5)**

The engineering inspection, conducted by Laurence C. Fehner, PE of Norton & Schmidt Consulting Engineers, LLC, concluded the damage to the Swinney home resulted from "differential settlement of the foundation walls" and not from high winds in the area some eight (8) months earlier.  **(Material Undisputed Fact No. 6)**

The Plaintiff did not agree with the conclusions reached by Norton & Schmidt and, thus, elected to retain her own engineering company to inspect the structure.  Larry Vorba, PE, PMP inspected the home in mid-2006, and then concluded the damage was the result of high winds.  **(Material Undisputed Fact No. 12)**   As a result of the new and conflicting information, State Farm sent the Vorba report to Norton & Schmidt (Laurence C. Fehner, PE) for review and comment.  Mr. Fehner did not agree with Mr. Vorba's conclusions and sent to State Farm a detailed report explaining why the claim of wind damage could not be substantiated.  **(Material Undisputed Fact No. 13)**

At that point there was an obvious difference of opinion concerning the cause of the damage to the Swinney house.  Two qualified engineers had inspected the house and reached different conclusions about the cause.  However, State Farm found the Fehner report to be more complete and, therefore, more accurate.

Although State Farm concluded that "settlement" was the more likely cause of the damage, the decision was neither "frivolous nor unfounded" but was backed by both an inspection by a qualified structural engineer and by an analysis of why high winds could not have been the cause of the damage.  *Chavez v. Chenoweth,* 89 N.M. 423, 553 P.2d 703 (Ct. App. 1976).  Simply because others in a four-state region may have reported damage from high winds at or about the same time as the Swinney loss was alleged to have occurred, does not automatically equate to the same cause of loss for the Plaintiff.  Indeed,

it is a well-known fact that with a tornado, "ground contact is often of an intermittent nature - - lasting usually less than a couple of minutes in any particular area - - because the tornado skips along." *See,* Tornado Safety Facts at www.climate.ok.gov/tornadosafety/tornadofacts.

State Farm had a reasonable basis for denying the Plaintiff's claim when the inspector, Engineer Fehner, concluded the damage resulted from settling, shrinkage and deflection, and did not occur as a result of high winds or tornados. Clearly, the reasons for the loss are "fairly debatable". State Farm is entitled to debate those issues and is not required to simply pay the claim because Plaintiff's inspector has a differing opinion concerning the cause of the loss. *United Nuclear Corp. v. Allendale Mutual Insurance Co.,* 103 N.M. 480, 709 P.2d 649 (1985)

As for Plaintiff's allegations of untimely investigation, her own expert has concluded that any delay in the inspection was not important to the overall handling of the case. **(Material Undisputed Fact No. 8)** There are simply no material facts at issue with regard to Plaintiff's claims of bad faith and breach of fiduciary duty. Where "there is no genuine issue as to any material fact [ ] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

### B.    There is No Evidence to Support Plaintiff's Claim for Violation of the New Mexico Insurance Code

In regard to the New Mexico Unfair Claims Practices Act, NMSA 1978, § 59A-16-20, Plaintiff must present evidence in support of her allegations that State Farm failed and refused to "timely, thoroughly investigate" her claim, (Complaint, ¶ 33) and refused to "settle or pay" the claim. (Complaint ¶ 33) Further, the claim for attorney fees and

11

costs under NMSA 1978, §§ 39-2-1 and 59A-16-30, itself requires a finding of bad faith on the part of the insurer.

As discussed above, State Farm denied the claim only after careful investigation, which included the initial investigation by Norton & Schmidt, **(Material Undisputed Fact Nos. 2 & 4)** and the later review and analysis of the separate investigation undertaken by Plaintiff's expert Cyntergy.  **(Material Undisputed Fact Nos. 12 & 13)**

In this case, it is difficult to determine precisely which subsection of the Unfair Claims Practices Act, §§ 59A-16-1 *et seq.* NMSA 1978 (hereinafter "Act"), State Farm is alleged to have violated as the Plaintiff does not specify the statutory references. However, the allegations of untimely and incomplete investigation and failure to settle or pay the claim suggest that two subsections may be at issue.  The first, §59A-16-20(C) identifies a failure to "adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims…" as a violation of the Act.  The second subsection at issue, §59A-16-20(E) establishes that a failure to not attempt "in good faith to effectuate prompt, fair and equitable settlements of an insured's claim…" is also considered a violation of the Act.

Applying the undisputed material facts to these subsections or to similar allegations establishes, however, that no such violations occurred in this case.  First, the Plaintiff's expert admits that State Farm has adopted "outstanding claims manuals and policies and procedures," (**Material Undisputed Fact No. 14)** directly contradicting Plaintiff's claim of a violation of §59A-16-20(C).  Likewise, Mr. Strzelec believes any delay that may have occurred in the investigation of this case by State Farm is "not important to the overall handling of this case." **(Material Undisputed Fact No. 8)**

Further, the investigation led State Farm to conclude the alleged damages were not caused by wind or tornados. Instead, the damages resulted from settling of the house. This conclusion led to a denial of the claim, rather than a "prompt, fair and equitable settlement". The decision to deny the claim was based upon reasonable grounds – the inspection and conclusions of Norton & Schmidt. *United Nuclear, Id.* The decision cannot be deemed to have been "frivolous" or "unfounded". *Chenoweth, Id.* Hence, there is no evidence to support Plaintiff's claim of an alleged violation of the Unfair Claim Practices Act. In the absence of evidence supporting the alleged violations of NMSA 1978, § 59A-16-20, summary judgment should be entered dismissing Count III of Plaintiff's Complaint.

### C. There is No Evidence to Support Plaintiff's Claim that State Farm Violated the Unfair Practices Act ("UPA")

The New Mexico Supreme Court has identified four elements that must be established in order to recover under the Unfair Practices Act, NMSA 1978, §§ 57-12-1, *et. seq*.

> First, the complaining party must show that the party charged made an "oral or written statement, visual description or other representation…" that was either false or misleading. Second, the false or misleading misrepresentation must have been "knowingly made in connection with the sale, lease, rental or loan of goods or services in the extension of credit or…collection of debts…" Third, the conduct complained of must have occurred in the regular course of the representer's trade or commerce. And, fourth, the representation must have been of the type that "may, tends to or does, deceive or mislead any person."

*Ashlock v. Sunwest Bank of Roswell, N.A.,* 107 N.M. 100, 101, 753 P.2d 346, 347 (1988). All four elements must be established or a claim under the Unfair Practices Act will fail. *Stevenson v. Louis Dreyfus Corp.,* 112 N.M. 97, 100, 811 P.2d 1308, 1311

13

(1991). In addition, the *Stevenson* court found that the alleged improper action must be at the time of the sale and a subsequent failure in performance does not fall within the Act. The Plaintiff in this case is making the argument that a post-sale alleged breach of contract and/or alleged violations of the Unfair Claims Practices Act, §59A-16-1 *et seq.*, constitute violations of the UPA. However, this argument has previously been rejected by the Courts of New Mexico. A breach of contract, or subsequent negligent conduct, by itself is not sufficient to establish liability under the UPA. *See, Stevenson,* 112 N.M. at 100, 811 P.2d at 1312 (a mere failure "to deliver the quantity of goods or services contracted for" is not sufficient to give rise to a claim under the UPA; rather, each of the four required elements under the UPA must be established.)[1]

Plaintiff fails to allege any specific misrepresentation by State Farm in Count IV of her Complaint, which is the first, indispensable element under the Unfair Practices Act. Where the first of the four essential elements of this claim has not been pled and cannot be proven, this claim must fail. *Stevenson, Id.* Absent evidence that State Farm knowingly made a false or misleading misrepresentation to Plaintiff *at the time the insurance policy was purchased*; Count IV fails as a matter of law**.**

### D. Punitive Damages

Finally, Plaintiff contends throughout her Complaint that State Farm's actions were "willful, wanton, reckless, in bad faith, grossly negligent" and subject to punitive or exemplary damages. Under New Mexico law, a party must prove "an evil motive or

---

[1] As the Supreme Court of New Mexico stated, "[t]he mere fact that Dreyfus failed 'to deliver the quantity of goods or services contracted for' would result in every breach of contract case being a violation of the Act; and every party found to have breached a contract by failure to deliver would be automatically liable for attorney's fees and potentially liable for treble damages under Section 57-12-10 (Repl. Pamp. 1987). We do not believe that the legislature intended such a result." *Stevenson,* 112 N.M. at 99, 811 P.2d at 1310.

14

culpable mental state" in order to be entitled to punitive damages from its insurer. *Sloan v. State Farm Mut. Auto. Ins. Co.,* 2004-NMSC-004, ¶17, 135 N.M. 106, 85 P.3d 230 (2004). The insured must prove that the defendant's conduct was "malicious, reckless or wanton" before punitive damages may be awarded. *Allsup's Convenience Stores, Inc. v. North River Ins. Co.,* 1999-NMSC-006, 127 N.M. 1, 17, 976 P.2d 1, 17 (1998).  Furthermore, "It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 123 S.Ct. 1513, 1521 (2003), *citing BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996).  Because there is no evidence of such conduct by State Farm in connection with this claim, the claim for punitive damages should be dismissed as a matter of law.

WHEREFORE, State Farm requests that its Motion for Partial Summary Judgment be granted, that the Court rule that State Farm acted reasonably in its investigation and subsequent denial of Plaintiff's claims as a matter of law, that Counts II, III and IV of the Complaint be dismissed with prejudice, that all claims for punitive damages be dismissed with prejudice, and for such other relief as is just and proper.

Respectfully submitted,

WALLACE, SAUNDERS, AUSTIN,
BROWN AND ENOCHS, CHARTERED


By   /s/ James L. Sanders
    James L. Sanders    KS #11483
    10111 West 87th Street
    P.O. Box 12290
    Overland Park, KS 66282
    (913) 888-1000/ (913) 888-1065
    jsanders@wallacesaunders.com
    *Attorney for Defendants*

and

Terry R. Guebert
Christopher J. DeLara
GUEBERT BRUCKNER P.C.
P.O. Box 93880
Albuquerque, NM  87199-3880
(505) 823-2300
tguebert@guebertlaw.com
cdelara@guebertlaw.com
*Attorneys for Defendants*

I HEREBY CERTIFY that on the 10th day of September, 2010, I filed the foregoing electronically through the CM/ECF system, which caused the following Parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Steven J. Vogel, Esq.
10400 Academy Road, N.E., Suite 240
Albuquerque, NM  87111-7364
vogelesq@aol.com

Phillip A. Brooks, Esq.
106 West 11th Street, Suite 1540
Kansas City, Missouri 64105
pbrooks@fulcherbrookslaw.com

 /s/ James L. Sanders
James L. Sanders

16