## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DIANE SWINNEY,          )
                              )

**Plaintiff,**              )

                              )     **CIVIL ACTION**

**v.**                       )

                              )     **Case No. 10-2021-CM**

**STATE FARM FIRE AND CASUALTY**  )
**COMPANY,**              )

                              )

**Defendant.**            )

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE REGARDING THE TESTIMONY OF STEPHEN STRZELEC [Doc. 207]

**COMES NOW** the Plaintiff, Diane Swinney, (*hereinafter* "Swinney"), by and through her attorneys, Steven Vogel, The Revo Law Firm and Fulcher & Brooks, LLC, and responds as follows to Defendant State Farm Fire and Casualty Company's ("State Farm") Motion in Limine. [Doc. 207]  The field of insurance and the applicable standards, customs and practices must be established by insurance experts such as Mr. Strzelec; who, by knowledge, experience, training and education, will assist the jury in this case.

## STATEMENT OF MATERIAL FACTS

1.     Stephen Strzelec was one of State Farm's top employees and a high ranking manager and supervisor of State Farm Fire and Casualty Insurance Company for almost 18 years.  He began as a Trainee Claim Representative (CR) in the Fire Company to Fire Reinspector/Trainer, Fire Superintendent, Auto CR, Auto Superintendent, Auto Divisional Claim Superintendent and the Auto/Fire Section Manager for the entire State of Alaska.  He handled and/or supervised thousands of insurance claims, including homeowner's claims which included the investigation, evaluation, negotiation and resolution of claims.

As a Superintendent, he was responsible for decision-making on coverage, liability, amounts owed, and procedures.  He directly supervised claim supervisors, claim representatives, estimators and support staff.

As State Farm's Auto Divisional Claim Superintendent for Alaska, then later as State Farm's Auto/Fire Section Manager for Alaska, I was responsible for setting and maintaining claim-handling standards.  I was also responsible for ensuring corporate policies, practices, and procedures were followed by every employee. I prepared and reviewed management reports that addressed numerous issues in the Claims operation.  I was responsible for supervision of all litigation in Alaska, including suits against the company for bad faith or extra-contractual damages.

As State Farm's Auto Divisional Claim Superintendent for Alaska and Auto/Fire Section Manager for Alaska, he was responsible for setting and maintaining claim-handling standards and ensuring corporate policies, practices, and procedures were followed by State Farm's employees.  He also served as the Claim Manager for the Alaska Insurance Guarantee Association from 1996 to 2002.

Mr. Strzelec attended various training classes and seminars, including:  Fire Claim Training Series, Evaluating Structural Losses (which is particularly relevant here and would include high wind/tornado damages as well as collapse damages), Fire Basic Claim School, Fire Intermediate Claim School, Fire Estimatics School, Training for Trainers, Management Orientation, XACTIMATE Software Training (which is used to determine the cost of repair in cases such as Swinney's repair to the home, garage and foundation for collapse damages).

Mr. Strzelec has specific expertise as Superintendent, Divisional Claim Superintendent, and Section Manager, participating in numerous catastrophes (the June 30, 2005 high

winds/tornadoes were assigned a catastrophe code by State Farm) and handled or supervised the handling of thousands of claims in both Auto and Fire and provided opinions based upon initial limited documentation and <u>NO</u> depositions.  [Doc. 208, Exhibits A-E & Exhibit BB]

      2.     The crux of this case is State Farm's violations of their fiduciary obligations of good faith and fair dealing to their own policyholder, Diane Swinney, and their statutory violations in failing to timely, fairly investigate, evaluate and pay Swinney's claims and damages for over 5 years after the June 30, 2005 high winds/tornadoes and the collapse of part of Swinney's home in February of 2006.  [Doc. 1, Plaintiff's Complaint & Doc. 205, Exhibit BB]

      May 11, 2010 – The Court issued its Amended Pretrial Order giving an extension of time for the parties to engage in discovery regarding the issues of bad faith and unfair trade practices. This was done as State Farm finally took Mr. Strzelec's deposition on May 14, 2010 and State Farm designated an expert, Mr. Madison, whose deposition was taken June 23, 2010 which was thereafter reviewed by Mr. Strzelec who provided his Rebuttal and Supplemental Expert Report based on the new deposition and documentation.  [Doc. 195, Pretrial Order]

      Defendant State Farm requested that discovery be stayed regarding the bad faith and statutory issues until the Court decided the proper forum and law to be applied.  State Farm succeeded and the Court allowed discovery and additional depositions, including deadlines for rebuttal witnesses and testimony regarding bad faith and statutory issues.  State Farm cannot now claim that they have been prejudiced by testimony they requested and were allowed and ordered by the Court.

      As additional discovery and information was obtained Plaintiff was obligated to supplement Mr. Strzelec's report pursuant to Rule  26(a)(3)(A) and case law.

**RESPONSE TO DEFENDANT STATE FARM'S FACTS**

1.     Deny as incomplete, as there are also claims for insurance bad faith and violations of the New Mexico Insurance Code and New Mexico Unfair Practices Act, punitive and other damages allowed by law.  Admit there is a claim for breach of contract.

2.     Admit.

3.     Deny that it only involves property damage, as it involves all causes of action and damages allowed by law.

4.     Admit.

5.     Admit.

6.     Admit.

7.     Admit.

8.     Mr. Rogers contacted Plaintiff's counse and advised he was undergoing a devastating divorce and would not continue to work with us.  Mr. Rogers was identified and Defendant did not request his deposition nor Mr. Ortwein's.  Immediately upon learning of Mr. Rogers' problems Plaintiff alerted State Farm's attorney.  We have now relocated Mr. Rogers.

9.     Deny as Plaintiff's informed Defendant immediately and there was no prejudice to Defendant.  Admit Defendant filed a motion.

10.     Admit.

11.     Deny, as the Court specifically allowed continuing discovery for bad faith and statutory claims and the law requires supplementation where, as here, new documents, facts and depositions were obtained.  [Doc. 208, Exhibit A-E]

12.     Admit.

13.     Admit and Plaintiff complied with the Court's orders and the law.

4

14.     Admit.

15.     Admit.

16.     Admit that, pursuant to Court Orders, the law and additional depositions and documents Plaintiff provided the required supplementation. [Doc. 208, Exhibit A-E]

17.     Deny, as his initial report provided general opinions as <u>NO</u> depositions had been taken and very limited documentation had been obtained.  One <u>cannot</u> provide additional opinions until additional depositions and documentation become available and then the parties are required by law to supplement, which occurred in this case.   [Doc. 208, Exhibit A-E]

WHEREFORE, Plaintiff respectfully requests that the Court deny State Farm's Motion in Limine and for any further relief deemed appropriate.

Respectfully submitted,

**/s/  Steven Vogel_____**
STEVEN VOGEL
10400 Academy Road NE - Suite #240
Albuquerque, New Mexico 87111
(505) 293-8888

I certify that on the 24th day of September, 2010, I filed the foregoing electronically through the CM/ECF system which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

TERRENCE REVO
ROGER SMITH
Revo Law Firm
10400 Academy NE - #200
Albuquerque, New Mexico 87111
(505) 293-8888

TERRY GUEBERT
Guebert & Bruckner, P.C.
tguebert@guebertlaw.com

PHILLIP A. BROOKS
Fulcher & Brooks, LLC
Mark Twain Tower
106 West 11th Street, Suite 1540
Kansas City, Missouri 64105
(816) 471-2111

BRIAN G. BOOS
Wallace Sunders
bboos@wallacesaunders.com
***Attorney for Defendant State Farm***

**/s/  Steven Vogel_____**
STEVEN VOGEL

***Attorneys for Plaintiff***

Stephen L. Strzelec                                    May 14, 2010

Page 103

1    I don't think they correctly applied it, and I don't

2    think they correctly looked at the entire policy with the

3    denial, you know.  They didn't consider any additional

4    coverages including collapse as well.

5         Q.   Do insurance companies like State Farm adopt

6    some kind of claims manuals or standards for claims

7    adjusting?

8         A.   I have reviewed claim manuals for, I don't

9    know, well over a dozen companies.  I couldn't name all

10   the companies I've reviewed their claim manuals, but

11   every company I've ever been involved with has got claim

12   manuals and policies and procedure for the handling of

13   claims, yes, and State Farm does as well.

14        Q.   Is State Farm supposed to follow their own

15   claim guidelines or claim manuals?

16        A.   Yes.  The standard is to adopt and implement

17   those standards.  The implementation is to follow and

18   force those claim handling standards.

19        Q.   Do you have an opinion as to whether did State

20   Farm adopt and implement their claims manuals or

21   standards in this case?

22             MR. GUEBERT:  Object to the form.

23        A.   I believe State Farm has adopted some

24   outstanding claim manuals and policies and procedures.  I

25   don't think that in this case they were either properly

Stephen L. Strzelec                        May 14, 2010

Page 104

1    implemented or they weren't correctly followed; one or

2    the other.

3         Q.    Based upon what you've testified to before and

4    all the other information?

5         A.    Yes.  Based on my prior testimony and all the

6    information I've reviewed.

7         Q.    Why is it important for an insurance company to

8    try to settle catastrophic claims within, say, a 90-day

9    period of time?

10        A.    That's a good question.  Several states

11   actually have regulations that require CAT claims to be

12   contacted and settled within a specific period of time.

13   CAT claims especially just because they -- well, all

14   claims can cause hardship and hardship on insurance, but

15   CAT claims can be -- I was going to say catastrophic, but

16   that would be really redundant -- CAT claims can impact

17   not only just an individual insured but an entire area

18   and have ramifications much beyond an individual loss.

19        Q.    Did State Farm settle Swinney's claims within

20   90 days?

21        A.    No, they did not.  90 days had expired from the

22   time it was reported until I believe it was probably

23   about 90 days by the time they got back the engineer's

24   report.

25        Q.    Do you have an opinion as to whether State Farm