IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DIANE SWINNEY,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**STATE FARM FIRE AND CASUALTY** )<br>**COMPANY,** )<br>)<br>**Defendant.** ) | CIVIL ACTION<br><br>Case No. 10-2021-CM |

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE
REGARDING AMOUNTS PAID BY STATE FARM FOR CATASTROPHIC
CLAIMS ARISING FROM THE 2005 TORNADO SEASON [Doc. 209]

**COMES NOW** the Plaintiff, Diane Swinney, (*hereinafter* "Swinney"), by and through her attorneys, Steven Vogel, The Revo Law Firm and Fulcher & Brooks, LLC, and responds as follows to Defendant State Farm Fire and Casualty Company's ("State Farm") Motion in Limine [Doc. 209].

State Farm speculates that Plaintiff will introduce evidence, "…to show that because State Farm paid other insureds for wind and tornado damage, that Plaintiff is also entitled to payment for wind and tornado damage."  [Doc. 210, Page 1]

This is incorrect.  Plaintiff will present evidence regarding the standards, applied in good faith and statutory claims adjusting requiring a fair investigation, evaluation and payment of claims.

Here, State Farm ignored the fact that a catastrophe code had been assigned to these storms which caused severe damage and resulted in payments by State Farm.  These are standard, routine practices by State Farm and other insurers which is relevant to determine whether State Farm violated these standards and establishes KNOWLEDGE of these storms and

damages.  We will only ask the jury to impose punitive damages for conduct which occurred in Kansas.

## UNDISPUTED MATERIAL FACTS

1. Insurance Expert Stephen Strzelec testified regarding catastrophe codes, stating:

92
8   Q. Now, what is the significance of a catastrophe
9   code that's assigned by State Farm?
92
11    A. When a catastrophe hits an area that's given a
12   specific date of loss and a CAT code is assigned that
13   allows them to gather all the information regarding that
14   catastrophe, all the claims are assigned to that CAT
15   code, and they're able to first of all set reserves based
16   on the totality of the catastrophe as opposed to
17   individually.  It allows them to keep track of the amount
18   of damages paid off as attributable to the CAT.
92
25    Q. Are you aware that from these -- around

93
1   June 30, 2005, the tornadoes or other high wind events in
2   Kansas, Missouri, Oklahoma and Texas, that State Farm
3   assigned a catastrophe code?

5     A. I'm aware of that, yes.
6     Q. Are you aware that State Farm has admitted in
7   discovery that they paid out about $12,398,803 in damages
8   involving 2,763 other claims regarding these storms?
93
11    Q. What, if anything, could State Farm have done
12   when adjusting Swinney's claim when they know about all
13   these other storms in this area and the number of claims
14   and the amount of damages that they paid out?
16    A. Well, clearly, that's one more piece of
17   information that's available to the claim handler and the
18   claims people when looking at this loss.  And seeing the
19   large trees that are blown down and the damage to the
20   neighboring structures and the other damage, I think it's
21   clear they are aware that there was a significant wind
22   event, and it's clear that there was significant damage
23   in the local area of the insured's loss, which would lend
24   them to believe that perhaps, or to look, to focus their

25    investigation to look to see if, in fact, the damage here

94

1    was caused by this wind event.
2        Q.  Do you see anything that State Farm considered
3    this series of storms in the catastrophe code that they
4    applied when they adjusted Swinney's claim?
5        A.  There are mentions in the agent's logs and
6    different places within the claim file that it was
7    reported as being damage from the tornado, but I don't
8    see where there was any real strong investigation
9    regarding it being wind damage.  I think the engineer's
10   report said, "Look at this.  It's settling," and they
11   went with that instead of investigating that possibility.  (Exhibit 1)

      2.      State Farm admitted it issued catastrophe codes and paid claims.  (Exhibit 2)

      3.      State Farm's 30(b)(6) corporate representative and employee Kent Peterson stated

in his deposition:

29

5    Q.  Now, this is the part that I'm real
6  interested in is the catastrophe codes.  Can you tell
7  us, first, what is a catastrophe code for State Farm?
8    A.  A catastrophe code is our recognition of an
9  event on a statewide basis.  Generally speaking, on a
10  specific date or dates, we have an event that comes
11  through.  That event can be a water event.  It can be a
12  wind event, a hail event, some combination of all of
13  those things as a storm system sweeps through a
14  particular area.
15      We look at catastrophe codes based on having
16  or expected to have at least 500 claims from a property
17  and casualty standpoint.  That would be on the
18  homeowners side.  Auto looks at that independent of our
19  situation.

33

12    Q.  And you just -- well, let's use the one here.
13  For the tornado in -- in and around Columbus, Kansas,
14  and the dates that you guys had given us were like --
15  began, I guess, June 29th and 30th of 2005.
16    A.  Correct.
17    Q.  Okay.  You're aware of that tornado?
18    A.  Yes.

36
8      In this tornado that hit in June 29th, 30th
9  of 2005, where would have been the main office that you
10  would handle these catastrophe code claims out of?
11     A.  The two main offices would have been either
12  the Kansas City area.  And I believe we still had a
13  location opened on the Kansas side in Johnson County.

43
2     Q.  Okay.  Let me just, if you flip to the very
3  last page, it -- in the very last sentence, it says,
4  "In addition, on the above date there were 365 reported
5  claims for Catastrophe PA in Nebraska resulting in
6  $1,649,760 in indemnity paid."
7        Do you see that?
8     A.  Yes, I do.
9     Q.  Okay.  So those four states then would have
10  been included in this Catastrophe Code PA?
11     A.  Correct.

CLAIMS FOR FOUR STATES

39
13     Q.  Okay.  Do you know, as it says, "Geographic
14  scope of Catastrophe Code PA may have included
15  Columbus, Kansas.  Total reported claims for the states
16  of Kansas, Missouri, and Oklahoma for Catastrophe
17  Code PA were 2,398."
18        Do you see that?
19     A.  I see that.
20     Q.  So we know that it was in at least those
21  three states:  Kansas, Missouri, and Oklahoma?
22     A.  Correct.
23     Q.  And then total indemnity paid for these
24  reported losses was $10,749,043.  Do you see that?
25     A.  Yes.

40
1     Q.  And is this just an ongoing thing, or are
2  they still paying claims from this tornado; do you
3  know?
40
5     A.  I would suggest that we probably are not
6  paying at this point.  Generally, two years is the time
7  frame, based on our policy language, with replacement a
8  cost benefits.  After two years, it's -- you're only

```
 9   eligible for actual cash value and not eligible to
10   retain your replacement cost benefits.
11          There could be an extenuating circumstance
12   that a claim may have been reported late in the
13   process, and based on those circumstances there could
14   potentially still be something out there that may be
15   linked or tracked back to this.  But I would believe
16   that probably within, you know, 95 to 99 percent of the
17   claims should encompass it.  (Exhibit 3)
```

WHEREFORE, Plaintiff respectfully requests that the Court deny State Farm's Motion in

Limine and for any further relief deemed appropriate.

|  | Respectfully submitted, |
|---|---|
|  | **/s/  Steven Vogel_____** |
|  | STEVEN VOGEL |
|  | 10400 Academy Road NE - Suite #240 |
|  | Albuquerque, New Mexico 87111 |
|  | (505) 293-8888 |
|  |  |
|  | TERRENCE REVO |
| I certify that on the 24th day of September, | ROGER SMITH |
| 2010, I filed the foregoing | Revo Law Firm |
| electronically through the CM/ECF | 10400 Academy NE - #200 |
| system which caused the following | Albuquerque, New Mexico 87111 |
| parties or counsel to be served by | (505) 293-8888 |
| electronic means, as more fully reflected |  |
| on the Notice of Electronic Filing: | PHILLIP A. BROOKS |
|  | Fulcher & Brooks, LLC |
| TERRY GUEBERT | Mark Twain Tower |
| Guebert & Bruckner, P.C. | 106 West 11th Street, Suite 1540 |
| tguebert@guebertlaw.com | Kansas City, Missouri 64105 |
|  | (816) 471-2111 |
| BRIAN G. BOOS |  |
| Wallace Sunders | *Attorneys for Plaintiff* |
| bboos@wallacesaunders.com |  |
| *Attorney for Defendant State Farm* |  |

**/s/  Steven Vogel_____**
STEVEN VOGEL

STEPHEN STRZELEC

                                   92

8    Q. Now, what is the significance of a catastrophe
9    code that's assigned by State Farm?

                                   92

11   A. When a catastrophe hits an area that's given a
12  specific date of loss and a CAT code is assigned that
13  allows them to gather all the information regarding that
14  catastrophe, all the claims are assigned to that CAT
15  code, and they're able to first of all set reserves based
16  on the totality of the catastrophe as opposed to
17  individually. It allows them to keep track of the amount
18  of damages paid off as attributable to the CAT.

                                   92

25   Q. Are you aware that from these -- around

                                   93

1   June 30, 2005, the tornadoes or other high wind events in
2   Kansas, Missouri, Oklahoma and Texas, that State Farm
3   assigned a catastrophe code?

5   A. I'm aware of that, yes.
6   Q. Are you aware that State Farm has admitted in
7   discovery that they paid out about $12,398,803 in damages
8   involving 2,763 other claims regarding these storms?

                                   93

11   Q. What, if anything, could State Farm have done
12  when adjusting Swinney's claim when they know about all
13  these other storms in this area and the number of claims
14  and the amount of damages that they paid out?
16   A. Well, clearly, that's one more piece of
17  information that's available to the claim handler and the
18  claims people when looking at this loss. And seeing the
19  large trees that are blown down and the damage to the
20  neighboring structures and the other damage, I think it's
21  clear they are aware that there was a significant wind
22  event, and it's clear that there was significant damage
23  in the local area of the insured's loss, which would lend
24  them to believe that perhaps, or to look, to focus their
25  investigation to look to see if, in fact, the damage here

                                   94

1   was caused by this wind event.
2   Q. Do you see anything that State Farm considered
3   this series of storms in the catastrophe code that they



```
4    applied when they adjusted Swinney's claim?
5         A.  There are mentions in the agent's logs and
6    different places within the claim file that it was
7    reported as being damage from the tornado, but I don't
8    see where there was any real strong investigation
9    regarding it being wind damage.  I think the engineer's
10   report said, "Look at this.  It's settling," and they
11   went with that instead of investigating that possibility.
```

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DIANE SWINNEY,

    Plaintiff,

v.                                  No. CV-08-227 WJ/ACT

STATE FARM FIRE AND CASUALTY
COMPANY, a foreign corporation,
STATE FARM ADJUSTER CODY CHAVEZ,
And JOHN DOES 1-3,

    Defendants.

## DEFENDANT STATE FARM'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

COMES NOW the Defendant, State Farm Fire and Casualty Company (hereinafter "State Farm"), by and through its attorneys, Guebert, Bruckner & Bootes, P.C., and submits this, its Responses to Plaintiff's First Request for Production of Documents, as follows:

**REQUEST FOR PRODUCTION NO. 1:** All claims for property damage from State Farm insureds caused by tornadoes and/or other wind phenomena within a 100-mile radius of Columbus, Kansas on or about June 30, 2005.

**SUPPLEMENTAL RESPONSE:** Objection. State Farm objects to this Request as it seeks confidential information concerning State Farm's insureds that is expected to remain protected under the right to privacy. State Farm further objects that this Request is vague as to production of "[a]ll claims for property damage," overly broad both in scope and geography, unduly burdensome and requests information irrelevant to the present matter. In addition, this


EX 2

production of "[a]ll documents regarding catastrophe codes..for..damage occurring on or about June 30, 2005," overly broad both in scope and geography, unduly burdensome and requests information irrelevant to the present matter. In addition, this Request may seek confidential trade information protected from disclosure without a confidentiality agreement and protective order.

Subject to and without waiving the foregoing, State Farm's Fire Catastrophe Estimatics and Claim Handling Practices document for Catastrophe Code PA may be responsive to this Request. State Farm is attempting to obtain a copy of the document and will produce it if and when it becomes available.

**REQUEST FOR PRODUCTION NO. 6:** All claims made by State Farm insureds regarding catastrophe codes assigned by State Farm for tornado and/or wind damage occurring on or about June 30, 2005.

**SUPPLEMENTAL RESPONSE:** Objection. State Farm objects to this Request as it seeks confidential information concerning State Farm's insureds that is expected to remain protected under the right to privacy. State Farm further objects that this Request is vague as to production of "[a]ll claims made by State Farm insureds regarding catastrophe codes," overly broad both in scope and geography, unduly burdensome and requests information irrelevant to the present matter. In addition, this Request may seek confidential trade information protected from disclosure without a confidentiality agreement and protective order.

Subject to and without waiving the foregoing, <u>State Farm issued Catastrophe Code PA for a beginning date of loss of June 29, 2005. The geographic scope of Catastrophe Code PA may have included Columbus, Kansas. Total reported claims for the states of Kansas,</u>

4

Missouri and Oklahoma for Catastrophe Code PA were 2,398. Total indemnity paid for these reported losses was $10,749,043.

In addition, on the above date there were 365 reported claims for Catastrophe Code PA in Nebraska resulting in $1,649,760 indemnity paid.

GUEBERT, BRUCKNER & BOOTES, P.C.

By _____
Terry R. Guebert
Christopher J. DeLara
Lisa M. Bolle
P. O. Box 93880
Albuquerque, NM 87199-3880
(505) 823-2300
Attorneys for Defendants

0101.683bf/supplemental RFP.State Farm – Federal/

5

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DIANE SWINNEY,

       Plaintiff,

vs.                                   No. CV-08-227-MCA/ACT

STATE FARM FIRE AND CASUALTY
COMPANY, a foreign corporation,
STATE FARM ADJUSTOR CODY CHAVEZ,
and JOHN DOES 1 through 3,

       Defendants.
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

VIDEOTAPED DEPOSITION OF

KENT PETERSON


November 17, 2008

9:11 a.m.


Holiday Inn Express

11130 Ambassador Drive

Kansas City, Missouri


Naola C. Vaughn, CCR, CRR, RPR

Missouri CCR No. 1052, Kansas CCR No. 0895



CATASTROPHE CODES

29

5  Q.  Now, this is the part that I'm real
6  interested in is the catastrophe codes.  Can you tell
7  us, first, what is a catastrophe code for State Farm?
8  A.  A catastrophe code is our recognition of an
9  event on a statewide basis.  Generally speaking, on a
10 specific date or dates, we have an event that comes
11 through.  That event can be a water event.  It can be a
12 wind event, a hail event, some combination of all of
13 those things as a storm system sweeps through a
14 particular area.
15      We look at catastrophe codes based on having
16 or expected to have at least 500 claims from a property
17 and casualty standpoint.  That would be on the
18 homeowners side.  Auto looks at that independent of our
19 situation.

33

12 Q.  And you just -- well, let's use the one here.
13 For the tornado in -- in and around Columbus, Kansas,
14 and the dates that you guys had given us were like --
15 began, I guess, June 29th and 30th of 2005.
16 A.  Correct.
17 Q.  Okay.  You're aware of that tornado?
18 A.  Yes.

36

8       In this tornado that hit in June 29th, 30th
9  of 2005, where would have been the main office that you
10 would handle these catastrophe code claims out of?
11 A.  The two main offices would have been either
12 the Kansas City area.  And I believe we still had a
13 location opened on the Kansas side in Johnson County.

43

2  Q.  Okay.  Let me just, if you flip to the very
3  last page, it -- in the very last sentence, it says,
4  "In addition, on the above date there were 365 reported
5  claims for Catastrophe PA in Nebraska resulting in
6  $1,649,760 in indemnity paid."
7       Do you see that?
8  A.  Yes, I do.
9  Q.  Okay.  So those four states then would have
10 been included in this Catastrophe Code PA?
11 A.  Correct.

CLAIMS FOR FOUR STATES

39

13    Q.  Okay.  Do you know, as it says, "Geographic
14  scope of Catastrophe Code PA may have included
15  Columbus, Kansas.  Total reported claims for the states
16  of Kansas, Missouri, and Oklahoma for Catastrophe
17  Code PA were 2,398."
18        Do you see that?
19    A.  I see that.
20    Q.  So we know that it was in at least those
21  three states: Kansas, Missouri, and Oklahoma?
22    A.  Correct.
23    Q.  And then total indemnity paid for these
24  reported losses was $10,749,043.  Do you see that?
25    A.  Yes.

                            40

1    Q.  And is this just an ongoing thing, or are
2  they still paying claims from this tornado; do you
3  know?
                            40
5    A.  I would suggest that we probably are not
6  paying at this point.  Generally, two years is the time
7  frame, based on our policy language, with replacement a
8  cost benefits.  After two years, it's -- you're only
9  eligible for actual cash value and not eligible to
10  retain your replacement cost benefits.
11        There could be an extenuating circumstance
12  that a claim may have been reported late in the
13  process, and based on those circumstances there could
14  potentially still be something out there that may be
15  linked or tracked back to this.  But I would believe
16  that probably within, you know, 95 to 99 percent of the
17  claims should encompass it.