IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **DIANE SWINNEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| v. | ) | |
| | ) | **Case No. 10-2021-CM** |
| **STATE FARM FIRE AND CASUALTY** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**LEGAL MEMORANDUM IN SUPPORT OF
PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [Doc. 205]**

**COMES NOW** the Plaintiff, Diane Swinney, (*hereinafter* "Swinney"), by and through her attorneys, Steven Vogel, The Revo Law Firm and Fulcher & Brooks, LLC, and provides her legal memorandum in support of her Response to Defendant State Farm Fire and Casualty Company's ("State Farm") Motion for Partial Summary Judgment [Doc. 205]:

**LEGAL DISCUSSION**

State Farm's fundamental legal argument appears to be that they, "…made a decision to deny the claim, as a result of the Fehner report…" and therefore, they timely, fairly investigated, evaluated and denied the claim, as the house settled. [Doc. 205, page 7] State Farm makes four (4) general legal arguments which we will address seriatim:

**I
THERE IS AMPLE EVIDENCE TO SUPPORT
STATE FARM'S LIABILITY FOR INSURANCE BAD FAITH**

State Farm argues, "…where payment of policy proceeds depends upon an issue of law or fact that is 'fairly debatable'…" the insurer is entitled to abate that issue and cites *United Nuclear v. Allendade,* 103 N.M. 408, 709 P.2d 649 (1985). Fortunately, that is not and has

NEVER been the law in New Mexico.  This is a single sentence from Judge Bivin's concurrence and was NOT the opinion of the Court.

Language in a opinion that is not expressly joined in by a majority of the members of the Court is not an "opinion of the Court" for purposes of *stare decisis*.  *Primus v. Clark,* 58 N.M. 588, 594-95, 273 P.2d 963, 967 (1954),  *Garcia v.Bittner,* 120 N.M. 191, 195, 900 P.2d 351, 355 (Ct.App. 1995), *State v. Powell*, 114 N.M. 395, 402, 839 P.2d 139, 146 (Ct.App. 1992)

The phrase "fairly debatable" has been used in only one insurance case in New Mexico – the concurrence of Judge Bivin's in *Allendale*.  Neither the Supreme Court nor the Court of Appeals, in an opinion concurred in by the majority, has ever adopted that standard in an insurance case.

The New Mexico Supreme Court's UJIs have NOT adopted this standard. In our case of *Sloan v. State Farm Mutual Auto. Ins. Co.,* 2004-NMSC-004, 135 N.M. 106, 85 P.3d 230, the New Mexico Supreme Court took the opportunity to rewrite the punitive damage insurance bad faith instruction (13-1718) and did NOT adopt the "fairly debatable" standard.

The question of whether an insurer has fulfilled its duty to conduct a fair and timely investigation and evaluation is related to, but distinct from, the question of whether its failure to pay was unfounded or frivolous.

> We acknowledge, however, that the reasonableness of the insurer's conduct is generally an element of the jury's inquiry in determining whether compensatory damages should be awarded. For this reason, the bracketed second sentence of our jury instruction reads, "In deciding whether to pay a claim, the insurance company must act reasonably under the circumstances to conduct a timely and fair [investigation or evaluation] of the claim." UJI 13-1702 NMRA 2003. <u>In failure-to-pay claims, therefore, a plaintiff under these circumstances might make a proper showing that the insurer acted unreasonably in denying or delaying a claim, entitling the plaintiff to compensatory damages, without having made a prima facie showing that the refusal to pay was frivolous or unfounded.</u> In such circumstances, it is

> <u>proper for the trial court to submit the plaintiff's bad-faith claim to the jury for consideration of an award of compensatory damages</u> …

*Sloan, infra.*, ¶.  (Emphasis added).

Therefore, before reaching the issue of whether State Farm's failure to pay this claim was "unfounded" or "frivolous," the bad faith claim must be submitted to the jury if there was sufficient evidence to submit the question of whether State Farm failed to fulfill its duty to conduct a fair and timely investigation, evaluation and payment of the claim.  If so, it is liable for the compensatory damages found by the jury on the contract and bad faith claims.  *Sloan, infra. See also, Skaling v. Aetna Ins. Co.,* 799 A.2d 997, 1011 (R.I. 2002) ("The insurer's failure to conduct an appropriate and timely investigation may subject the insurer to bad faith liability notwithstanding the merits of the claim."); *Dakota v. Acuity,* 771 N.W.2d 623, 630 (S.D. 2009) (same).

There is sufficient evidence to submit to the jury that State Farm did not fulfill its duty to timely and fairly investigate and evaluate this claim.  Basically, it accepted Mr. Fehner's "settlement" letter based upon visual observations, stopped there and denied the claim.  State Farm had knowledge of other facts, including the Catastrophe Code they assigned to the June 30, 2005 series of storms and tornadoes, and as a result of the storms paid $12,398,803 in damages involving 2,763 other claims.

The jury shall hear this testimony and may determine that Swinney's home and garage were damaged by the June 30, 2005 high winds and tornadoes and the house did <u>NOT</u> suddenly "settle" after about 125 years.  The knowledge that Meteorologist Mitchell and Engineer Vorba had opined that high winds caused damage did not require State Farm to agree to coverage; but, at a minimum, those facts required it to investigate sources that could have shed light on whether or not the claim was covered prior to denial.

Had State Farm chosen to investigate Swinney's tornado damage thoroughly it might have paid the claims. However, State Farm's intentionally deficient investigation is a breach of its duty to honestly and fairly balance its own interests with the interests of the insured. Having breached that duty State Farm is in no position to speculate that its decision would have been the same. Otherwise, insurers will have no incentive to perform these duties which may provide facts and evidence requiring claim payments.

The insurer's duty to timely and fairly investigate the claim requires it to **"fully explore the possible bases that might support the insured's claim before denying it."** *Wilson v. 21st Century Ins. Co.,* 42 Cal.4th 713, 721, 68 Cal.Rptr.3d 746, 752, 171 P.3d 1082, 1087 (2007). "The insurer may not just focus on those facts which justify denial of the claim." *Id.* When an insurer is presented with conflicting evidence, it has a duty to make a reasonable investigation in order to rationally resolve the conflict; it has no right to say "Aha! we've got something to support denial so we can deny the claim and stop the investigation."

In *Scanlon v. Life Ins. Co. of North America, Inc.,* 670 F.Supp.2d 1181 (W.D. Wash 2009), for example, the insurance claim was covered if the decedent died in an accident, but not if a result of natural causes. One doctor opined that the cause of death was a natural cause – a heart attack. But there was other evidence which suggested that death was the result of an accidental fall. The insurer only relied on the evidence that the cause of death was a heart attack and denied coverage. The court granted summary judgment to the plaintiff on the grounds that there was no genuine issue of material fact that the insurer was liable for insurance bad faith by its failure to conduct a timely and fair investigation.

> ... Ms. Leister [on behalf of the insurer] was confronted with conflicting conclusions. If she had referred the case to another investigator, such as Dr. Denton, she would have learned that the cause of death was "best certified as accidental." Ms. Leister failed to resolve the conflicting opinions,

4

> however. In fact she failed to perform any further investigation whatsoever. Immediately hearing from the first doctor who gave her a reason to deny Plaintiff's claim, she sent a denial letter. <u>Such behavior manifests bad faith</u>.

*Id.* at 1196. (Emphasis added). *See also*, *Mariscal v. Old Republic Life Ins. Co.,* 42 Cal. App. 4th 1617, 50 Cal.Rptr.2d 224 (1996) (bad faith judgment against insurer affirmed where, although insurer had some evidence upon which to deny claim, there was substantial evidence that in reaching its decision it did not consider "all the information reasonably available to it at the time it denied the claim." *Id.* 50 Cal.Rptr.2d at 227). *See generally,* 44A Am.Jur.2d *Insurance*, § 1740 ("When investigating a claim, an insurer has a duty to diligently search for evidence that supports the insured's claim and not merely seek evidence upholding its own interests."). *See also*, *Simmons v. Congress Life Ins. Co.,* 791 So.2d 371 (Ala. 2000) (even if the initial decision to deny a claim was made in good faith, an unreasonable failure to reconsider and investigate further when facts come to light indicating such a reconsideration is necessary subjects insurer to liability for insurance bad faith).

Accordingly, there is more than substantial evidence to submit to the jury in the case at bar the that State Farm is liable for insurance bad faith based on the breach of its duty to conduct a timely and fair investigation, evaluation and payment of this claim.

## TORTIOUS BAD FAITH CLAIMS ADJUSTING

### UJI – 13-1705 EVIDENCE

**Under the "bad faith" claim, what is customarily done by those engaged in the insurance industry is evidence of whether the insurance company acted in good faith. However, the good faith of the insurance company is determined by the reasonableness of its conduct, whether such conduct is customary in the industry or not. Industry customs and standards are evidence of good or bad faith, but they are not conclusive.**

## NEW MEXICO INSURANCE BAD FAITH – NO SINGLE DEFINITION

**New Mexico does not adhere to a single definition of bad faith in the context of insurance matters,** *Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 102 N.M. 28, 690 P.2d 1022, 1025 (NMSC 1984), the key principle underlying the covenant of good faith in an insurance contract is that the insurer treat the interests of the insured equal to its own interests.

The court noted that New Mexico does not adhere to a single definition of bad faith, but that the **"key principle underlying the covenant of good faith in an insurance contract is that the insurer treats the interests of the insured equally to its own interests."** *City of Hobbs I*, 162 F.3d at 582. "An insurance company acts in bad faith when it places its own interests ahead of the interests of the insured." *City of Hobbs I*, 162 F.3d at 582.

## BAD FAITH DELAY IN CLAIMS ADJUSTING

Under the "bad faith" claim, delay in and of itself is evidence of the insurance company's bad faith. *Travelers Ins. Co. v. Montoya,* 90 NM 556, 566 P. 2d 105 (1977) and *Jessen v. National Excess Ins. Co.*, 108 NM 625, 776 P.2d 1244 (1989) discussed delay by insurance company is bad faith: **Delay may be evidence of bad faith. If you find in this case that the insurance company failed to timely investigate or failed to timely pay the claim, this may be evidence of bad faith.**

## DUTY TO PROMPTLY AND THOROUGHLY INVESTIGATE

*Jessen v. National Excess Ins. Co.,* 108 N.M. 625, 776 P.2d 1244, (NMSC 1989):

> **The duty of good faith dealing by parties to an insurance contract has been recognized as a nondelegable duty, breach of which supports the award of punitive damages.** *Timmons v. Royal Globe Ins. Co.*, **653 P.2d 907 (Okla. 1982). The duty of the insurance company includes "a duty to the insured to make a reasonably prompt investigation of all relevant facts \*\*\*. And, if the insurance company cannot give its insured a valid reason for denying the claim, it has a final duty to promptly honor it."**

6

>**Bankers Life & Cas Co. v. Crenshaw*, 483 So.2d 254, 276 (Miss. 1985), aff'd 486 U.S. 71, 108 S. Ct. 1645, 100 L. Ed. 2d 62 (1988); see also *Mize v. Harford Ins. Co.,* 567 F. Supp. 550 (W.D. Va. 1982); J. McCarthy, *Punitive Damages in Bad Faith Cases*    1.11 (4th ed. 1987).  We hold National was not relieved of liability because McManaman was an independent contractor.**
>
>**National relied on the inconclusive results of McManaman's investigation as the reason for delaying payment on Jessen and McCoun's claim.  We believe the jury properly could find this was an independent wrongful act.  The jury also properly could have found this act grossly negligent or committed with reckless disregard for the interests of the insured.**

### GOOD FAITH FIDUCIARY OBLIGATION TO POLICYHOLDER

**Issue of good faith is generally a question of fact for the jury.**  See *General Motors Acceptance Corp. v. Anaya*, 103 N.M. 72, 76, 703 P.2d 169, 173 (N.M. 1985).

See *Ellingwood v. N.N. Invs. Life Ins. Co.*, 111 N.M. 301, 805 P.2d 70 (NMSC 1991):

>**We have allowed the award of punitive damages in insurance cases under a more relaxed standard in part because of the fiduciary obligations inherent in insurance relationships and because of concerns arising from the bargaining position typically occupied by the insured and insurer.  See *Chavez v. Chenoweth*, 89 NM, 423, 430, 553 P.2d 703, 710 (Ct. App. 1976) (relationship between insurer and insured imposes <u>fiduciary</u> obligation on insurer to deal with insured in good faith in matters pertaining to performance of insurance contract)."**

*Blacks Law Dictionary* (4th Ed) –

"<u>Fiduciary</u> – a person holding the character of a trustee in respect to the trust and confidence involved in it and the scrupulous good faith and candor which it requires . . .

<u>Fiduciary Relation</u> - . . . the law raises a rule that neither party may . . . in such a way as to benefit himself . . ."

New Mexico recognizes that an insurer owes its insured a fiduciary duty to deal with the insured in good faith in matters pertaining to the performance of the insurance contract. *Allsup's Convenience Stores, Inc. v. North River Ins. Co.*, 1999-NMSC-006, ¶ 37, 127 N.M. 1, 15, 976 P.2d 1, 15 (**"The fiduciary duty is present 'because of the fiduciary obligations inhering in**

7

**insurance relationships and because of concerns arising from the bargaining position typically occupied by the insured and the insurer.'** *Romero v. Mervyn's*, 109 N.M. 249, 255, 784 P.2d 992, 998 (1989)

Under the "bad faith" claim, delay in and of itself is evidence of the insurance company's bad faith. *Travelers Ins. Co. v. Montoya,* 90 NM 556, 566 P. 2d 105 (1977) and *Jessen v. National Excess Ins. Co.*, 108 NM 625, 776 P.2d 1244 (1989) discussed delay by insurance company is bad faith: **Delay may be evidence of bad faith. If you find in this case that the insurance company failed to timely investigate or failed to timely pay the claim, this may be evidence of bad faith.**

*O'Neel v. USAA,* 2002-NMCA-028, 41 P.3d 356, held:

> "…there is a view of the evidence presented in this case from which the jury could reasonably and properly conclude that… **USAA nevertheless acted in bad faith during its handling of O'Neel's claim for reasons other than its refusal to pay O'Neel's claim in full.**" *Id.* at 359.
>
> **"…the record contains evidence to support a finding of bad faith against USAA based on conduct separate from USAA's refusal to pay O'Neel the full amount of the claim originally submitted to USAA."** *Id.* at 359.
>
> **"…USAA's bad faith could have been premised on conduct other than its refusal to pay O'Neel the full amount that he originally claimed."** *Id.* at 360

State Farm argues new excuses for claim denial which violates the Mend The Hold Doctrine which prohibits an insurance company from basing their actions in denying a claim upon <u>one</u> basis and later attempting to create a <u>second</u> basis for denying the claim.

As the Courts stated in discussing this doctrine: The New Mexico Supreme Court in *Telman v. Galles,* 63P.2d 1049;

> **"Appellant cannot here mend his hold by shifting to a new theory of defense in a motion for rehearing."**

The New Mexico Supreme Court in *Irwin v. Sovereign Camp of Woodmen of the World,* 110 P. 550;

> **"where a party gives a reason for his conduct and decision touching anything in a controversy, he cannot, after litigation has begun, put his conduct in another and different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law."**

> **"presenting that objection alone as a justification for disavowing its liability under its contract of indemnity, it cannot, after litigation is begun, be heard to urge other and additional grounds for refusing the payment for the loss sustained."**

The United States Supreme Court in *Davis v. Wakelee,* 156 U.S. 680, 15 S.Ct. 555;

> **"where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interest has changed, assume a contrary position."**

> **"He is not permitted thus to mend his hold."**

## II
## VIOLATION OF THE NEW MEXICO INSURANCE CODE

### UJI – 13-1706 VIOLATION OF INSURANCE CODE

There was in force in this state, at the time of the claim handling in this case, a law prohibiting certain practices by insurance companies.

If defendant engaged in any one of these practices, it is liable to plaintiff for damages proximately caused by its conduct if it acted knowingly.

> **"A. misrepresents to insureds pertinent facts or policy provisions relating to coverage's at issue;
> C. fails to adopt and implement reasonable standards for the prompt investigation and processing of insured claims arising under policies;
> E. not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear;**

> **F. failing to settle all catastrophic claims within a ninety-day period after the assignment of a catastrophic claim number when a catastrophic loss has been declared;**
>
> **G. compelling insureds to institute litigation to recover amounts due under policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds when such insureds have made claims for amounts reasonably similar to amounts ultimately recovered;**

## INSURANCE CODE APPLICATION

The New Mexico Courts have consistently applied the Insurance Code's statutory requirements to insurance company conduct. The Court in *G & G Services, Inc. v. Agora Syndicate, Inc.*, 2000-NMCA-003, 128 N.M. 434, 993 P.2d 251 upheld the statutes application of the Code and stated in pertinent part:

> **"…we conclude that it was the jury's responsibility to decide if Agora acted reasonably. The jury could reasonably determine from these facts that Agora had breached its contract…violated the Insurance Code by failing to adopt reasonable standards for the prompt investigation and processing of G & G's claims arising under the policies and by failing to promptly provide G & G with a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim…"** *See also Allsup's v. North River Ins.*, 1999-NMSC-006, 976 P.2d 1

Furthermore, an expert in insurance bad faith may reasonably rely on the application of statutes in determining the reasonableness of a company's actions. *Kraeger v. Nationwide Mut. Ins. Company,* 1997 WL 109582 (E.D.Pa. 1997). It would be reasonable for experts in bad faith insurance practices to look to the relevant statutory and regulatory requirements in examining the reasonableness of an insurer's actions. *Id.* at *2. The California Supreme Court has allowed expert testimony on "the conduct and motives of an insurance company in denying coverage":

> We can conceive of many ways in which a lay jury, in assessing the conduct and motives of an insurance company in denying coverage under its policy, could benefit from the opinion of one who by profession and experience, was peculiarly equipped to evaluate such matters in the context of similar disputes. *Neal v. Farmers Ins. Exch.*, 21 Cal.3d 910, 924 (1978)

10

# III
# VIOLATION OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT (UPA)

**UJI – 13-1707 VIOLATION OF UNFAIR PRACTICES ACT §57-12-1**

**There was in force in this State, at the time of the dealings in this case, a law prohibiting a person selling insurance from engaging in unfair or deceptive trade practices. An unfair or deceptive trade practice is any false or misleading oral or written statement, visual description or other representation of which tends to or does deceive or mislead the policyholder.  A person who is deceived by an unfair or deceptive trade practice may recover damages proximately caused by the deception.  Plaintiff contends that Defendant engaged in the following prohibited practices:**

**(17)  failing to deliver the quality or quantity of goods or services contracted for;**

"Unconscionable trade practice" means any act or practice in connection with the sale or… the offering for sale…of any goods or services, including services provided by licensed professionals,…which is to a person's detriment:

**(1)  takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree;**

In the case of *G & G Services v. Agora*, 2000-NMCA-003 , 128 N.M. 434, the court stated:

> **"…we conclude that it was the jury's responsibility to decide if Agora acted reasonably.  The jury could reasonably determine from these facts that…Agora violated the Unfair Practices Act by failing to deliver the quality or quantity of goods contracted for."**

**This UPA applies to all misleading or deceptive statements, whether intentionally or unintentionally made.** *Ashlock v. Sunwest Bank*, 107 N.M. 100, 753 P.2d 346 (1988)

Because the Unfair Practices Act constitutes remedial legislation, its provisions are liberally interpreted to facilitate and accomplish its purposes and intent.  *State ex rel. Stratton v. Gurley Motor Co*. 105 N.M. 803, 737 P.2d 1180 (Ct. App. 1987).

In *Stevenson v. Louis Dreyfus Corp.*, 112 N.M. 97, 811 P.2d 1308 (NMSC 1991), the court stated:

> "By recognizing that the Act applies to all misleading or deceptive statement, whether intentionally or unintentionally made, we insure that the Unfair Practices Act lends the protection of its broad application to innocent consumers."
>
> "Webster's Third New International Dictionary 1252 (1971), defines "knowing" as "having or reflecting knowledge, information, or insight." *Taylor v. Hanchett Oil Co.*, 37 N.M. 606, 609, 27 P.2d 59, 60 (1933), we stated: "Knowledge" does not necessarily mean "actual knowledge," but means knowledge of such circumstances as would ordinarily lead, upon investigation, in the exercise of reasonable diligence which a prudent man ought to exercise, to a knowledge of the actual facts. <u>One who intentionally remains ignorant is chargeable in law with knowledge</u>."

(Emphasis Added)

### IV
### THE FAILURE TO TIMELY INVESTIGATE, EVALUATE OR PAY COULD BE FOUND BY THE JURY TO HAVE BEEN RECKLESS OR WILLFUL SO AS TO SUPPORT AN AWARD OF PUNITIVE DAMAGES

**UJI 13-1718. PUNITIVE DAMAGES**

**If you find that plaintiff should recover compensatory damages for the bad faith actions of the insurance company, and you find that the conduct of the insurance company was in reckless disregard for the interests of the plaintiff, or was based on a dishonest judgment, or was otherwise willful or wanton, then you may award punitive damages.**
"Reckless conduct" is the intentional doing of an act with utter indifference to the consequences.
**"Dishonest judgment" is a failure by the insurer to honestly and fairly balance its own interests and the interests of the insured.**
"Willful conduct" is the intentional doing of a wrongful act with knowledge that harm may result.
"Wanton conduct" is the doing of an act with utter indifference to or conscious disregard for a person's rights.
Punitive damages are awarded for the limited purposes of punishment and to deter others from the commission of like offenses.
The amount of punitive damages must be based on reason and justice, taking into account all the circumstances, including the nature of the wrong and such aggravating and mitigating circumstances as may be shown. The amount awarded, if any, must be reasonably related to the compensatory damages and injury.

The issue of punitive damages may properly be submitted to the jury. In *Sloan*, the New Mexico Supreme Court held that **"in most cases, the plaintiff's theory of bad faith, if proven, will logically also support punitive damages."** *Id.* at ¶ 24. This case comes within the rule,

not the exception. The issue, again, is not simply whether State Farm had a single piece of evidence (Fehner's "settlement" letter) which, if considered in isolation and disregarding other evidence the insurer knew or reasonably could have discovered, could support denial of the claim. Here, there was ample evidence that the insurer avoided and completely disregarded evidence which would support coverage, repair and payment of the claimS. There was ample evidence that the insurer's conduct was reckless and willful.

> **When investigating a claim, an insurance company has a duty to diligently search for evidence which supports its insured's claim. If it seeks to discover only the evidence that defeats the claim <u>it holds its own interest above that of its insured.</u>**

*Mariscal*, 50 Cal.Rptr.2d at 225. (Emphasis added).

In *Sloan,* the New Mexico Supreme Court held that **"a failure by the insurer to honestly and fairly balance its own interest and the interest of the insured" is the type of "culpable mental state" sufficient to submit to the fact-finder the question of punitive damages.** *Id.* at ¶ 23. On the evidence here, this is not the rare case where it was proper to submit the issue of compensatory damages for insurance bad faith, but not the issue of punitive damages. Rather this is the usual case, where the evidence supporting the claim of compensatory damages for insurance bad faith further supports the submission of the issue of punitive damages.

## CONCLUSION

This case does not merit the "drastic measure" of summary judgment as a matter of law and request that the Court deny Defendant's Motion. The factual issues here shall be fairly presented to and decided by the jury under Swinney's constitutional right to a jury trial.

Respectfully submitted,

*/s/  Steven Vogel*_____
STEVEN VOGEL
10400 Academy Road NE - Suite #240
Albuquerque, New Mexico 87111
(505) 293-8888

TERRENCE REVO
ROGER SMITH
Revo Law Firm
10400 Academy NE - #200
Albuquerque, New Mexico 87111
(505) 293-8888

PHILLIP A. BROOKS
Fulcher & Brooks, LLC
Mark Twain Tower
106 West 11th Street, Suite 1540
Kansas City, Missouri 64105
(816) 471-2111
*Attorneys for Plaintiff*

I certify that on the 24th day of 2010, 2010, I filed the foregoing electronically through the CM/ECF system which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

TERRY GUEBERT
Guebert & Bruckner, P.C.
tguebert@guebertlaw.com

BRIAN G. BOOS
Wallace Sunders
bboos@wallacesaunders.com
*Attorney for Defendant State Farm*

*/s/  Steven Vogel*_____
STEVEN VOGEL